1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPHINA YEPEZ,                          No.  2:16-cv-2351-KJN

12                      Plaintiff,

13          v.                                 ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                       Defendant.
16

17

18          Plaintiff Josephina Yepez seeks judicial review of a final decision by the Commissioner of

19   Social Security ("Commissioner") denying plaintiff's application for Disability Insurance

20   Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In her motion for summary

21   judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was

22   not disabled from January 10, 2012, plaintiff's amended alleged disability onset date, through

23   March 31, 2012, plaintiff's date last insured.  (ECF No. 27.)  The Commissioner opposed

24   plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 30.)  No optional

25   reply brief was filed.

26   _____

27   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
     voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF
28   Nos. 6, 13.)

                                                    1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I.  BACKGROUND[2]

Plaintiff first applied for DIB and Supplemental Security Income ("SSI") on April 1, 2010, alleging that she had been disabled since June 27, 2008. (Administrative Transcript ("AT") 59.) Subsequently, in a January 9, 2012 decision, administrative law judge ("ALJ") Daniel Heely found that plaintiff was not disabled from June 27, 2008, plaintiff's alleged disability onset date, through the date of the decision. (AT 59-69.) That decision became the final decision of the Commissioner when the Appeals Council denied review, and plaintiff elected not to further appeal that decision to federal district court. (AT 75.)

On March 13, 2013, plaintiff filed a second application for DIB only, alleging disability as of June 27, 2008. (AT 15, 82, 171, 195.) Plaintiff later amended her alleged onset date to January 10, 2012. (AT 15.) After that application was denied initially and on reconsideration, ALJ Trevor Skarda conducted a hearing on December 18, 2014, at which plaintiff, represented by counsel, and a vocational expert ("VE") testified. (AT 15, 457-77.)[3] ALJ Skarda subsequently issued a decision dated April 15, 2015, determining that plaintiff had not been under a disability, as defined in the Act, from January 10, 2012, plaintiff's amended alleged disability onset date, through March 31, 2012, plaintiff's date last insured. (AT 15-22.) ALJ Skarda's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 29, 2016. (AT 1-3.) Plaintiff subsequently filed this action on September 30, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff testified with the assistance of a Spanish interpreter.

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly evaluated the opinion of plaintiff's treating physician; and (2) whether the ALJ erroneously discounted plaintiff's credibility.

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[4]  As an initial matter, the ALJ found that plaintiff last met the

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520,  404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step

3

insured status requirements of the Act on March 31, 2012. (AT 18.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity during the period from her amended alleged disability onset date of January 10, 2012, through her date last insured of March 31, 2012. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured: degenerative disc disease, demyelinating disease, and hypertension. (Id.) However, at step three, the ALJ determined that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ found that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (AT 18.) At step four, the ALJ determined, based on the VE's testimony, that, through the date last insured, plaintiff was capable of performing her past relevant work as a cannery worker, agriculture sorter, vegetable picker, and fruit picker. (AT 21.) Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 10, 2012, plaintiff's amended alleged disability onset date, through March 31, 2012, plaintiff's date last insured. (Id.)

////

three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ improperly evaluated the opinion of plaintiff's treating physician*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

On April 7, 2013, plaintiff's treating physician, Dr. Arundati Halappa, completed a form provided by plaintiff's attorney diagnosing plaintiff with lumbar spinal stenosis, cervical disc disease, and radiculopathy, and opined *inter alia* that plaintiff could only lift less than 10 pounds, could stand and walk for less than 2 hours a day, could sit for less than 2 hours a day, and would be absent from work more than 4 times per month.  (AT 321-23.)  He noted that plaintiff's diagnoses caused functional limitations for approximately the five (5) years prior.  (AT 323.)  For the reasons discussed below, the court finds no error in the ALJ's evaluation of Dr. Halappa's opinion.

This case does not present the typical scenario found in a new disability application where an ALJ's evaluation of the medical opinion evidence, including the treating physician's opinion, is challenged.  Here, in light of the prior non-disability finding, the ALJ was required to consider Dr. Halappa's opinion within the framework of the Ninth Circuit's *Chavez* decision and Acquiescence Ruling 97-4(9):

> In *Chavez*, we observed that principles of res judicata apply to administrative decisions regarding disability and impose an obligation on the claimant, in instances where a prior ALJ has made a finding of non-disability, to come forward with evidence of "changed circumstances" in order to overcome a presumption of continuing non-disability.  We also explained that a previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge.

Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (internal citations omitted) (citing Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988)); see also Acquiescence Ruling 97-4(9), available at 1997 WL 742758.  Indeed, as the Acquiescence Ruling notes, even if a claimant rebuts the presumption of continuing non-disability, an ALJ is required to adopt the previous ALJ's finding concerning RFC for purposes of the unadjudicated period, "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding."  Acquiescence Ruling 97-4(9), 1997 WL 742758, at *3.

////

In this case, ALJ Skarda noted the prior January 9, 2012 decision by ALJ Healy, which had assessed plaintiff with a RFC for medium work. (AT 16, 62.) ALJ Skarda explained that, given plaintiff's amended alleged disability onset date of January 10, 2012, and her date last insured of March 31, 2012, the case involved a very short period of adjudication of less than 3 months (January 10, 2012, through March 31, 2012). (AT 16.) ALJ Skarda specifically found that, because plaintiff did not change age category during that time, and because the medical evidence did not show any change in plaintiff's medical condition during that time that supported a different RFC finding than that made in ALJ Healy's prior decision, plaintiff had not rebutted the presumption of continuing non-disability. (Id.)

In formulating his decision, ALJ Skarda discussed Dr. Halappa's April 7, 2013 opinion in detail, but ultimately gave it little weight *as it relates to the period of March 31, 2012, or earlier.* (AT 20-21.) ALJ Skarda reasoned that, although the medical evidence documented significant escalation of plaintiff's symptoms in later 2013 and 2014, there was little evidence suggesting any change in plaintiff's symptoms, impairments, or functional limitations from January 10, 2012, to March 31, 2012. (AT 19.) Indeed, the record shows that Dr. Halappa did not see plaintiff between October 2011 and September 2012. (AT 331-32, 385.) At a September 18, 2012 visit, Dr. Halappa noted no major abnormalities on examination, except for slightly diminished muscle strength at 4 out of 5 in the left lower extremity. (AT 331-32.) Thereafter, when plaintiff returned to Dr. Halappa about 7 months later on April 3, 2013, plaintiff had reduced sensation in her legs and decreased strength in her arms, but her balance, gait, coordination, and deep tendon reflexes were normal. (AT 329-30.) Then, on April 7, 2013, Dr. Halappa issued the severe opinion discussed above. Consequently, ALJ Skarda reasonably found that the medical evidence, including Dr. Halappa's opinion, did not show a change in plaintiff's medical condition between January 10, 2012, and March 31, 2012, that would warrant a different RFC assessment than the January 9, 2012 RFC assessment by ALJ Healy.[6]

---

[6] Plaintiff's briefing also references a note from a hospital in Mexico indicating that plaintiff was last seen there on March 15, 2011, and should be on disability. (AT 356.) Even setting aside the conclusory nature of the note, it pertains to a period during which plaintiff was already determined not to be disabled, and by its own terms does not document any medical change

Additionally, contrary to plaintiff's contention, ALJ Skarda was not required to further develop the record by re-contacting Dr. Halappa for additional information. As noted above, the record unambiguously demonstrates that Dr. Halappa did not even see plaintiff during the relevant period under review, and in fact did not see plaintiff again until September 2012, several months after plaintiff's date last insured.

In sum, the court finds no error in ALJ Skarda's evaluation of Dr. Halappa's opinion.

*Whether the ALJ erroneously discounted plaintiff's credibility*

Plaintiff's brief argument concerning evaluation of her credibility plainly lacks merit, and consistent with the above-mentioned principles, may be disposed of without significant discussion. In the prior decision, ALJ Healy provided several reasons for discounting plaintiff's credibility, which plaintiff failed to challenge via judicial review. (AT 63-67.) Moreover, plaintiff failed to present any new and material evidence pertaining to the relevant period under review that would have required ALJ Skarda to re-assess plaintiff's credibility as part of his RFC assessment. Indeed, as noted above, the medical evidence did not support a change in plaintiff's medical condition between January 10, 2012, and March 31, 2012. As such, ALJ Skarda's evaluation of plaintiff's credibility is supported by the record and by the proper analysis.

V.    <u>CONCLUSION</u>

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (ECF No. 27) is DENIED.

2.    The Commissioner's cross-motion for summary judgment (ECF No. 30) is GRANTED.

3.    The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

////

---

between January 10, 2012, and March 31, 2012.

8

4.    The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  February 1, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE